MARY FRANCES PREVOST, SBN157782
402 West Broadway, Ste. 400
San Diego, California 92101
Tel:    (619) 692-9001
Fax:   (888) 959-3790
Email: Mary@MFPLawyer.com

Attorney for Plaintiff
BANA MOUWAKEH

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANA MOUWAKEH,<br><br>        Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, San Diego Sheriff BILL GORE, San Diego Sheriff's Deputy STEVEN DUNNING, San Diego Sheriff's Deputy AUGUSTIN ROSAS, JR., San Diego Sheriff's Deputy YVAN ROGERS, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.  15CV2372 W (KSC)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS**<br><br><br>**DEMAND FOR JURY TRIAL** |

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

        Plaintiff BANA MOUWAKEH hereby files the following <u>First Amended</u> Complaint for Damages and Violations of her federal Civil Rights against Defendants COUNTY OF SAN DIEGO, San Diego Sheriff BILL GORE, and SDSO deputies AUGUSTIN ROSAS, JR., STEVEN DUNNING and YVAN ROGERS and DOES 1–10, inclusive.

## <u>JURISDICTION AND VENUE</u>

This Court has subject matter jurisdiction over Plaintiffs' federal Constitutional claims brought under Title 42 United States Code ("U.S.C.") section 1983 under 28 U.S.C. sections 1331, 1343(1), (2), (3), and (4). and 2201. Venue in this Court is proper because the acts complained of occurred in the County of San Diego, which is located in the Southern District of California.

This action at law for money damages arises under Title 42 U.S.C. Section 1983 and the United States Constitution, the laws of the State of California and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiffs by said statutes, and by the First, Fourth, and Fourteenth Amendments of the United States Constitution.

## PARTIES

1. Plaintiff BANA MOUWAKEH is a United States citizen who, at all times relevant to this Complaint, resided in the County of San Diego.

2. Defendant COUNTY OF SAN DIEGO (hereinafter "COUNTY") is a municipal corporation duly organized under the laws of the State of California located in the County of San Diego. The San Diego Sheriff's Department (hereinafter "SDSO") is the chief law enforcement agency of the COUNTY.

3. At some times relevant to this Complaint, Defendant BILL GORE was the Sheriff of the SDSO and a policy-maker.

4. At all times relevant to this complaint, Defendant STEVEN DUNNING was a deputy Sheriff with the SDSO and an employee of the COUNTY. At all times mentioned herein, Defendant DUNNING acted under color of authority and pursuant to the course and scope of his employment and/or agency with the COUNTY.

5. At all times relevant to this Complaint, Defendant AUGUSTIN ROSAS, JR. was a deputy Sheriff with the SDSO and an employee of the COUNTY. At all times mentioned herein, Defendant ROSAS acted under color of authority and pursuant to the course and scope of his employment and/or agency

with the COUNTY.

6. At all times relevant to this Complaint, Defendant YVAN ROGERS was deputy Sheriff with SDSO and an employee of the COUNTY. At all times mentioned herein, Defendant ROGERS acted under color of authority and pursuant to the course and scope of his employment and/or agency with the COUNTY.

7. Defendant DOES 1-10 is unknown, corporations, municipalities, and/or other legal entities whose true names, identities and capacities are unknown at this time.

8. Plaintiff is informed, believes, and thereon alleges, that each of said fictitiously named DOE Defendants is responsible in some manner for the acts, omissions, and damages alleged herein. Plaintiff is unaware of the true names and capacities of the DOE Defendants, and, therefore, sues these Defendants under such fictitious names. Plaintiff is furthermore informed, believes, and thereon alleges, that each of said fictitiously named Defendants was the agent, servant, and employee, of each and every other Defendant acting within the course and scope of his or her agency and employment, and with the knowledge, ratification, and consent, of each respective principal. Plaintiff will seek leave to amend this Complaint when their true names and capacities have been ascertained.

## GOVERNMENT LIABILITY

9. Plaintiff alleges that all Defendants carried out the acts complained of in their individual and official capacities, in the course and scope of their employment, and under color of law. All individual Defendants are sued both in their individual and official capacities.

10. Regarding all actions and causes of action herein alleged and stated, all governmental defendants (including all DOE defendants) violated rights held by Plaintiff that were <u>clearly established</u> and which they had a mandatory duty to uphold. No reasonable official similarly situated to any of the Defendants could have believed that his/her conduct was lawful or within the bounds of reasonable

discretion.  All individual Defendants, including all individual DOE Defendants, thus lack immunity from suit or liability.  This extends both to statutorily created immunity and to the judicially created doctrine of "qualified immunity".

11.  Defendant CITY is also liable for the violations of Plaintiffs' federal constitutional rights brought under 42 U.S.C. section 1983 based upon Plaintiffs' *Monell* cause of action.  The bases for the CITY's liability in this context include, but are not limited to, the SDSO's supervisors' and policy-makers ratification of the illegal and unconstitutional conduct of their subordinate SDSO officers, and the fact that the violation of Plaintiff's rights was the result of an actual or *de facto* policy that encouraged and/or tolerated the violations of citizens' rights by SDSO officers.  This liability is direct and is based on the causes of action brought against the policy-making Defendants (to wit, current SDSO Chief BLL GORE in said Defendant's official capacity.

12.  Plaintiff is informed and believes and, on the basis of such information and belief, alleges that Defendants COUNTY, GORE, and DOES 1-10, with deliberate indifference, gross negligence, and reckless disregard for the safety, security, and constitutional and statutory rights of Plaintiff and all persons similarly situated, maintained, enforced tolerated, permitted, acquiesced in, and applied policies, practices,

or customs or, amongst other things:

a.  Subjecting citizens to unreasonable and outrageous seizures of their persons;

b.  Selecting, retaining, and assigning deputies with demonstrable propensities for excessive force, violence, and other misconduct; Specifically, Sheriff GORE defending an SDSO deputy's use of a Taser on 13-year-old Jeremy Banks; Specifically, Sheriff GORE taking no action against SDSO deputies who falsely arrested 61 year-old cancer patient Deborah Little; Specifically, Sheriff GORE denying there was a lack of training of SDSO Deputy Jeffrey Grey who attacked a man with Downs' Syndrome; specifically, Sheriff GORE condoning SDSO Deputy

Jeffrey Cruz's beating of a patron of Harrah's California Resort when the man was in handcuffs; specifically, Sheriff GORE condoning the repeated tasering of citizen Marcial Torres to the point he went into cardiac arrest and had to have both legs amputated. GORE conducted no internal investigation and Deputy Haddad was returned to regular duties; Specifically, GORE condoning a false arrest committed by SDSO Deputy Jason Philpot, which was ultimately dismissed by a judge. Philpot had repeatedly punched the citizen in the face and fractured the eye socket. GORE promoted Philpot to the Sheriff's training division, which instructs deputies on use of force; Specifically, in 2003, Deputy Jeffrey Jackson admitted to stalking a woman who sued the deputy after he shot and killed her husband. Despite multiple excessive-force lawsuits, Jackson remained on duty through Sheriff Bill Gore's appointment in 2009; Specifically, in 2009, Deputy Marshall Abbott, responding to a noise complaint, entered a home without a warrant to find roughly 40 people attending a Democratic Party fundraiser. After exchanging heated words with the host, Abbott threw her to the ground, causing injuries. Despite a lawsuit that resulted in a $1.2 million settlement, Abbott remained on duty, only to be hit in 2011 with another excessive-force lawsuit; Specifically, in 2011, Deputy Jason Philpot was the subject of an excessive-force lawsuit. The plaintiff accused him of bringing false criminal charges which were eventually dismissed by a judge. Shortly after, Philpot repeatedly punched a man in the face, fracturing his eye socket. Similarly, a jury acquitted the man of a resisting arrest charge. During this time, Philpot maintained a public MySpace page under the name "Knuckle Sandooch" and included a drawing of a law enforcement officer that read: "I'm going to kick your ass AND GET AWAY WITH IT." His occupation was listed as "Waste Management." After the excessive-force incident, Philpot was promoted to the sheriff's training division, which instructs deputies on use-of-force tactics; Specifically, in 2011, Sgt. Elizabeth Palmer cost the county $150,000 in a legal settlement. Patrick Howard filed a complaint against Palmer for unprofessional

conduct after she detained, yelled and threatened to bar him from the South County Courthouse for walking through the wrong metal detector. In alleged retaliation, she arrested Howard, who worked for an attorney service, a few days later at the courthouse. The charges were eventually dismissed, and Howard filed a lawsuit. As far back as 2001, Palmer has faced internal complaints involving racial discrimination and jokes. Recently, she's been the subject of two more civil rights lawsuits; Specifically, that GORE conducted no investigation and condoned the attack Plaintiff herein and condoned the false arrest and excessive force used against her so that it gave a "green light" to Defendant ROSAS to go out and harm another citizen, to wit: In or about April 2015 citizen Paul Rothstein was seated in his car committing no crime when Defendant ROSAS approached him and demanded he roll down his window or he would drag Mr. Rothstein out of the car and put him in the hospital. Indeed, Defendant ROSAS dragged Mr. Rothstein – an engineer with no criminal record - out of his car and falsely arrested him; Specifically, under GORE, use of force complaints were up by 60 % from 2010 while there were no more arrests, indicating a policy of condoning excessive force. As San Diego Sheriff Department's policy maker, GORE knew the actions of the deputies were unconstitutional and failed to take remedial action;

       c.     Failing to adequately train, supervise, and control police officers in the arts of law enforcement;

       d.     Failing to adequately discipline police officers involved in misconduct;

       e.     Condoning and encouraging police officers in the belief that they can violate the rights of persons such as the Plaintiff in this action with impunity and that such conduct will not adversely affect their opportunities for promotion and

other employment benefits.

f.      GORE maintain a pattern and practice of not obtaining timely reports from deputies involved in misconduct and allowing deputies to collaborate with each other and supervisors when writing incident reports. GORE was aware of repeated constitutional violations and failed to discipline deputies or take corrective measure, such as re-training deputies or disciplining deputies.

13.    Plaintiff is informed and believes and, on the basis of such information and belief, alleges that Defendants COUNTY and GORE, and DOES 1-10 ordered, authorized, acquiesced in, tolerated, or permitted Defendants DUNNING and ROSAS, ROGERS and DOES 1-10 to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth in the foregoing paragraph and ratified that conduct.

14.    Defendants DUNNING', ROSAS's and ROGERS' conduct alleged herein constitutes a pattern of intimidation, illicit law enforcement behavior, and statutory and constitutional violations based either on a deliberate plan by Defendants COUNTY, and GORE, and DOES 1-10 or on Defendants COUNTY and GORE, and DOES 1-10, deliberate indifference, gross negligence, or reckless disregard, to the safety, security, and constitutional and statutory violations of Plaintiff and all persons similarly situated.

15.    Plaintiff is informed and believes, and on the basis of such information and belief, alleged that Defendant COUNTY subsequently ratified the acts and related acts of GORE, DUNNING, ROGERS and ROSAS, and DOES 1-10, including the acts that are the subject of this lawsuit, against a number of persons involved in this and other events by, amongst other things, its County officials failing to take any actions in response to being fully informed of the actions of its deputies.

16.     Plaintiff is informed and believes, and based on that on information and belief, alleges that over a number of years San Diego Sheriff's Deputies have engaged in a number of acts of misconduct that have been condoned, ignored, and otherwise permitted to continue by the San Diego Sheriff's Department through its supervisors and Defendant GORE.  Some of these acts have been brought to the attention of the San Diego Board of Supervisors, which consistently had chosen to do nothing about them. Plaintiff is informed and believes and, on the basis of such information and belief, alleges that it is well established that the COUNTY, have no intentions to stop the ongoing misconduct by Sheriff Deputies.

17.     Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE is intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused the injuries for the events and happenings referred to, and thereby proximately caused the injuries and damages as herein alleged. The true names and capacities of DOES 1 through 50, inclusive, and each of them, are not now known to Plaintiff who therefore sued said Defendants by such fictitious names and will be added to this action as provided by California Code of Civil Procedure §484.

18.     Defendant COUNTY at all times herein mentioned is an agency of Defendant is a "Person" subject to suit within the meaning of 42 U.S.C. §1983 under *Monell v. Department of Social Services* (1978) 436 U.S. 685, 691. Under California Government Code §815.2 Defendant COUNTY is liable for any and all wrongful acts hereinafter complained of committed by any of the individual officer Defendants.

19.     All defendants are jointly and severally liable for all damages awarded (except punitive damages).  Under California Government Code section 825(a), the CITY is obligated to pay any compensatory damages and costs awarded against

their employees.

## GENERAL ALLEGATIONS

20.     On October 11, 2013 defendants ROSAS, ROGERS and DUNNING were conducting speed enforcement stops West San Marcos Boulevard in the City San Marcos.  Defendant ROSAS was training Defendant DUNNING.

21.     Defendant ROSAS claimed to have "visually" calculated Plaintiff's car traveling 70 miles per hour in a 50 miles per hour zone and then claimed to have confirmed with his laser, which he wrote in his official report. In fact, Plaintiff was not traveling at that speed because there was a blockage in the road ahead of her involving another car and two other officers which would have prevented her from traveling at that pace.

22.     Defendant ROSAS stepped into the road and flagged Plaintiff to pull over.  Plaintiff complied. Plaintiff provided her driver's license, registration and proof of insurance to Defendant ROSAS as he requested. Defendant ROSAS told Plaintiff she had been speeding and wrote in his report that he showed Plaintiff his laser, which he never did.  Plaintiff informed Defendant ROSAS that she was not traveling at the rate of speed he alleged, and requested that he provide his full name to her, which he declined to do.

23.     Plaintiff asked Defendant ROSAS several times for his name and badge number,  but he refused to respond to her inquiries. San Diego Sheriff's policy requires that deputies' nametags be visible at all times, and that deputies provide their names and badge numbers upon request from the public. Defendant ROSAS took Plaintiff's identifying information and walked back to his patrol car to write a ticket.

24.     Defendant ROSAS, accompanied by defendants DUNNING and ROGERS returned to Plaintiff's car. Plaintiff had against asked Defendant ROSAS to provide his full name and badge number to her, which he declined to do. As Plaintiff reached with her forefinger to uncover Defendant's badge, which was hidden underneath a traffic safety vest, Defendant ROSAS forcefully grabbed Plaintiff's arm

9

and said, "That's it, you're going to jail," leaned his body into her car to unlock and open it from inside, climbed into her car, forcibly grabbed her. Defendant ROGERS grabbed Plaintiff under her armpit and defendants ROSAS and ROGERS together dragged Plaintiff out of her car and dropped her to the ground. Defendant DUNNING immediately handcuffed Plaintiff. Plaintiff had never actually touched the deputy's vest.

25.     During the initial contact with Defendant ROSAS, Plaintiff told him she was disabled, that she had just had knee surgery and was pending hip replacement surgery. The physical attack by defendants ROSAS, ROGERS, and DUNNING re-injured Plaintiff's knee requiring her to put off her hip replacement surgery so her orthopedic doctor could perform surgery on the damage on her knee inflicted by the deputy defendants. Plaintiff's handcuffs were so tight around her wrists that she had numbness in her wrists for many months after the incident.

26.     Plaintiff was arrested for a violation of California Penal Code sec. 243(b) (Battery on a Peace Officer) and Penal Code sec. 148(a) (Resisting and Delaying and Officer). Defendant DUNNING wrote the ticket and named Defendant ROSAS as the victim. Neither Defendant ROSAS nor Defendant DUNNING issued Plaintiff a speeding ticket. There was no probable cause to arrest Plaintiff on speeding, or the Penal Code charges.

27.     Plaintiff was dragged to a patrol car where she was placed in the back seat. She was taken to the sheriff's substation where she underwent the indignity of being photographed and fingerprinted. Defendants held Plaintiff for nearly three hours. They did not provide her medical treatment, although she complained of severe pain. Three hours after she was falsely arrested, Plaintiff was released on her on her promise to appear in court.

28.     Defendants ROSAS, DUNNING and ROGERS all drafted reports which contained false descriptions of Plaintiff being agitated and non-compliant with Defendant ROSAS. Defendants ROSAS, DUNNING and ROGERS each falsified their

reports to state that Plaintiff had reached out and grabbed Defendant ROSAS vest, which she did not do, in order to cover up their false arrest and excessive force perpetrated on Plaintiff.

29.    In November 2013 a criminal complaint was filed by the San Diego District Attorney's office charging Plaintiff with a violation of Penal Code sec. 243(b) and 148(a). The Office of the District Attorney thereafter dismissed all charges against Plaintiff.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 - Unlawful Seizure, Arrest, and Detention

### (Against Defendants DUNNING, ROSAS and, and DOES 1-25)

30.    Plaintiff hereby incorporates the preceding paragraphs by reference as though each were set forth herein in full.

31.    The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

32.    On October 11, 2013, SDSO deputies ROSAS, DUNNING and ROGERS and DOES 1-10 illegally seized, detained, and arrested Plaintiff without probable cause, reasonable suspicion, and/or a warrant.  In so doing, the SDSO deputy Defendants deprived Plaintiff of her constitutional rights under the Fourth Amendment to the United States Constitution.

33.    In committing the acts and omissions alleged herein, the SDSO deputy Defendants acted in the course and scope of their employment, and thereby acted under color of law.  At no time did Plaintiff give valid consent to Defendants' unlawful actions, and the rights Defendants were violating were clearly established.

34.    In committing the acts and omissions alleged herein, the SDSO

deputy Defendants acted with malice, oppression and fraud.  Accordingly,

Plaintiffs are entitled to obtain punitive damages from SDSO Officer Defendants in

an amount sufficient to punish and deter such conduct, according to proof at the

time of trial.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – Excessive Force

### (Against Defendants ROSAS, DUNNING, ROGERS and DOES 1-10)

35.    Plaintiff hereby incorporates the preceding paragraphs by reference as

though each were set forth herein in full.

36.    In effectuating their unlawful arrest and/or detention of

Plaintiff, defendants ROGERS, ROSAS and DUNNING, and DOES 1-10 used

unreasonable and excessive force upon Plaintiff when they grabbed her by her

arms, dragged her out of her car and dropped her on the ground, handcuffed her,

lifted her off her feet, and dragged her to the patrol car, after they injured her knee

and hip preventing her from being able to walk without assistance.

37.    Even if the arrest of Plaintiff had been legal, which it was not, the

means used by SDSO deputy Defendants to effectuate the arrest constituted

excessive force and unreasonable force, thereby violating Plaintiff's clearly

established rights under the Fourth and Fourteenth Amendments of United States

Constitution.

38.    In effectuating their unlawful arrest and/or detention of Plaintiff

BANA MOUWAKEH on October 11, 2013, SDSO Officer Defendants used

unreasonable and excessive force upon Plaintiff when they grabbed her by her

arms, dragged her out of her car and dropped her on the ground, handcuffed her,

lifted her off her feet, and dragged her to the patrol car, after they injured her knee

and hip preventing her from being able to walk without assistance.

39.    Even if the arrest of Plaintiff had been legal, which it was not, the

means used by SDSO deputy Defendants to effectuate the arrest constituted

excessive force and unreasonable force, thereby violating Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of United States Constitution.

40. At no time did Plaintiff give valid consent to any of SDSO deputy defendants' unlawful actions described herein. Plaintiff further alleges that all defendants acted in the course and scope of their employment with the SDSO, thereby acting under color of law.

41. Plaintiff suffered pain, tenderness, discomfort, and contusions, as a result of being aggressively dragged out of the car and dropped on the asphalt. Additionally, the force used against her when she was dropped on the asphalt was so severe it reinjured a knee that had recently been operated on requiring her to have a second knee surgery to repair damage done by the excessive force. Furthermore, a scheduled hip replacement surgery had to be put off in order to accommodate the emergency knee repair surgery required as a result of the injuries sustained when the Defendant deputies used excessive force. Also, Plaintiff sustained numbing of her hands as a result of the handcuffs being placed too tightly on her wrists.

42. At no time could a reasonable officer in the position of SDSO deputy Defendants have believed that Plaintiff posed a threat either to the officers or anyone else, nor could a reasonable officer have believed that the amount and degree of force SDSO deputy Defendants employed was reasonably necessary to effectuate an arrest.

43. As such, the degree of force SDSO Deputy Defendants used against Plaintiff was without probable cause, reasonable grounds, or other justification, thereby violating Plaintiff's dignity and bodily integrity, invading their privacy, and proximately and foreseeably causing them damage, injury, and loss.

44. Moreover, since no force of any kind was justified, SDSO deputy Defendants' use of any force against Plaintiffs was a *per se* violation of their

1  constitutional rights.

2  　　45.　　In committing the acts alleged herein, SDSO deputy Defendants acted

3  with malice and oppression.  Plaintiff therefore is entitled to punitive damages

4  against SDSO deputy Defendants in an amount sufficient to punish and deter such

5  conduct, according to proof at the time of trial.

6  **THIRD CAUSE OF ACTION**

7  **RETALIATION FOR EXERCISE OF FIRST AMENDMENT**

8  **(Against Defendants ROSAS, DUNNING, ROGERS and DOES 1-10)**

9  　　46.　　Plaintiff hereby incorporates the preceding paragraphs by reference as

10  though each were set forth herein in full.

11  　　47.　　During the time of the initial traffic stop, Plaintiff informed Deputy

12  ROSAS that she had not been speeding, and that she was driving with the flow of

13  traffic.  She also informed him she was disabled, in that she had just had a knee

14  operation and was pending a hip replacement surgery so that it was difficult for her

15  to speed even had she wished to do so.  She repeatedly asked that ROSAS identify

16  himself, as he had no nametag visible, as is mandated by San Diego Sheriff's

17  Department policy and procedures. ROSAS refused to provide his name to her or

18  reveal his hidden nametag, took her license, and walked away to consult with

19  DUNNING and ROGERS.

20  　　48.　　Upon returning to the car, Plaintiff again demanded that ROSAS

21  identify himself, which he repeatedly refused to do. When Plaintiff reached towards

22  ROSAS to uncover his hidden badge, ROSAS grabbed Plaintiff and dragged her out

23  of the car in retaliation for her speech.

24  　　49.　　Those SDSO Officer Defendants named in this cause of action who

25  conspired with, verbally encouraged, and/or aided and abetted, and/or witnessed

26  SDSO Deputy ROSAS and were in a position to stop the violation of Plaintiff's

27  rights but failed to do so are also liable for the violation of Plaintiffs' First

28  Amendment rights.

14

1      50.    In committing the acts alleged herein, SDPD Officer Defendants acted

2   with malice and oppression.  Plaintiff therefore is entitled to punitive damages

3   against SDSO deputy Defendants in an amount sufficient to punish and deter such

4   conduct, according to proof at the time of trial.

5                           **FOURTH CAUSE OF ACTION**

6                        *Monell* **Claim  –  42 U.S.C. § 1983**

7          **(Against Defendant COUNTY, San Diego Sheriff BILL GORE and DOE**

8                        **SDSO Policy Making Defendants)**

9      51.    Plaintiffs hereby incorporate the preceding paragraphs by reference as

10  though each were set forth herein in full.

11     52.    As set forth herein above, the SDSO deputy Defendants violated a

12  number of Plaintiff's constitutional rights.  These included violations of the Frist,

13  Fourth and Fourteenth Amendments to the Constitution of the United States.

14  These actions by SDPD Officer Defendants were part of a wider pattern and

15  practice that was approved and encouraged by the SDPD.

16     53.    The physical abuse and meritless arrest of citizens such as Plaintiff

17  were consistent with the custom and practice endorsed, promulgated, and/or

18  tolerated by former San Diego Sheriff and all supervisory DOE Defendants with

19  final policy-making authority.

20     54.    This custom and practice, and the ratification by the supervisory

21  Defendants with final policy-making authority named herein of the illegal actions

22  performed by rank-and-file SDSO deputies pursuant to this policy, was the moving

23  force behind the SDSO deputy Defendants' violation of Plaintiff's rights that

24  occurred on October 11, 2013.

25     55.    Accordingly, the COUNTY is liable for the deprivation of Plaintiff's

26  constitutional rights by the SDSO deputy Defendants under *Monell v. Department*

27  *of Social Services of the City of New York* (1978) 436 U.S. 658, and its progeny,

28  which hold that a municipal entity may be held liable for violations of

Constitutional rights committed by its law enforcement officers if the violation was based on either:   (1) a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a custom or usage" with the force of law, or, (2) the fact that the illegal and unconstitutional conduct was ratified by an individual with final policy-making authority.

56.    Here both bases for municipal liability are present.

57.    First, Plaintiff is informed and believes, and thereon allege, that the SDSO had a departmental policy, custom, or practice (which was promulgated, encouraged, and/or tolerated by the Defendants named herein, to wit, SDSO supervisors and those with policy-making authority) of harassing and physically abusing citizens, and arresting them without probable cause in violation of these individual's civil rights.

58.    The decision to illegally arrest Plaintiff on October 11, 2013, was part and parcel of the illegal behavior encouraged by Defendant San Diego Sheriff GORE, and all supervisory DOE Defendants with final policy-making authority.

59.    Second, when confronted with the illegal arrest of, and excessive force used against Plaintiff, Defendants and all supervisory DOE SDSO Defendants with final policymaking authority, not only failed to take corrective action, but also ratified the illegal conduct of the SDSO deputy Defendants and other DOE Defendants.

60.    Overall, the pattern and practice of the SDSO and of the individuals with final policymaking authority within it (including, but not limited to, former San Diego Sheriff GORE and all supervisory DOE Defendants with final policy-making authority) was such that there was a permanent and settled culture, policy, and/or practice, which encouraged the false arrest and imprisonment of, and the use of excessive force against, citizens like Plaintiff.  This pattern and practice was a substantial factor in causing the injuries and damages suffered by Plaintiff in the

incident alleged herein.

## FIFTH CAUSE OF ACTION

### Failure to Properly Train – Violation of 42 U.S.C. § 1983

### (Against Defendant COUNTY, San Diego Sheriff GORE, and DOE SDSO

### Policy Making Defendants)

61.     Plaintiff re-alleges all prior paragraphs of this Complaint and incorporate said paragraphs herein by reference.

62.     Defendants, San Diego Sheriff GORE and all supervisory and/or policy-making SDSO DOE Defendants, as a matter of custom, practice, and policy, failed to maintain adequate and proper training as to the Constitutional rights of citizens and arrestees, to prevent the consistent and systematic arrests without probable cause, the use of excessive force, the falsifying of reports, and extra-judicial punishment by SDSO deputies.

63.     Defendants, San Diego Sheriff GORE and all supervisory and/or policy-making SDSO DOE Defendants failed to provide adequate training to their deputies on the requirement that citizens only be arrested based on probable cause or a valid warrant.

64.     Defendants, San Diego Sheriff GORE and all supervisory and/or policy-making SDSO DOE Defendants failed to provide adequate training to their deputies on the appropriate, reasonable, and/or legally permissible amount of force that may be used when effectuating an arrest.

65.      Defendants San Diego Sheriff GORE and all supervisory and/or policy-making SDSO DOE Defendants failed to provide adequate training to their deputies on the subject of police reports: to wit, they failed to properly train their offices in the SDSO that officers must file truthful and complete reports that do not contain false statements and/or omissions of material facts.

66.     At the time Defendants San Diego Sheriff GORE and all supervisory and/or policy-making SDSO DOE Defendants failed to properly train their

17

1  subordinate deputies, they knew, or in the exercise or care should have known, that

2  their failure to properly train their deputies was likely to result in citizens of the

3  County of San Diego suffering the exact type of violations of their Constitutional

4  rights which Plaintiff suffered in this case.

5       67.    Therefore, Defendants San Diego Sheriff GORE and all supervisory

6  and/or policy-making SDSO DOE Defendants with deliberate indifference,

7  disregarded a duty to protect the public from official misconduct.

8       68.    The failure by Defendants San Diego Sheriff GORE and all applicable

9  SDPD DOE Defendants, to promulgate or maintain constitutionally adequate

10  training was done with deliberate indifference to the rights of Plaintiff and others in

11  her position.

12       69.    The constitutionally infirm lack of adequate training as to SDSO

13  deputy Defendants, all law enforcement officers, caused Plaintiff to suffer the

14  damages alleged herein.

15       70.    As a result of actions of Defendants San Diego Sheriff GORE and all

16  supervisory and/or policy-making SDSO DOE Defendants and all applicable SDSO

17  DOE Defendants, Plaintiff suffered the physical, economic and psychological

18  injuries alleged herein.

19       71.    As a direct consequence of the failure of Defendants San Diego

20  Sheriff GORE and all supervisory and/or policy-making SDSO DOE Defendants to

21  properly train their deputies, Plaintiff was falsely arrested, SDSO deputy

22  Defendants used excessive force against her, SDSO deputy Defendants retaliated

23  against Plaintiff for exercising her First Amendment rights, and the SDSO Deputy

24  Defendants named herein filed false and misleading police reports with respect to

25  Plaintiff.  These acts and omissions by Defendants, and each of them, were legal

26  cause of the injuries and damages to Plaintiffs as herein alleged.

27  **SIXTH CAUSE OF ACTION**

28  **Failure to Supervise and Discipline – Violation of 42 U.S.C. § 1983**

**(Against Defendant COUNTY, San Diego Sheriff GORE, and DOE SDPD Policy Making Defendants)**

72. Plaintiff re-alleges all prior paragraphs of this Complaint and incorporate said paragraphs herein by reference.

73. Defendants San Diego Sheriff GORE and all applicable SDSO DOE Defendants, as a matter of custom, practice and policy, failed to supervise their officers to prevent, deter, and punish the unconstitutional and excessive use of force.

74. No supervising and/or policy-making officer from the SDSO took appropriate steps to supervise and control the SDSO deputy Defendants during their arrest of Plaintiff and/or when they filed their subsequent false police reports.

75. Defendants San Diego Sheriff GORE and all applicable SDSO DOE Defendants knew or should have known of the Constitutional violations committed by SDSO deputy Defendants against Plaintiff, but failed to correct their officers' abuse of authority, or discourage their unlawful use of authority.

76. Upon information and belief, Defendants San Diego Sheriff GORE and all applicable SDSO DOE Defendants witnessed or learned of the violations committed against Plaintiff, but failed to supervise or discipline the SDSO deputy Defendants named herein for their misconduct with respect to Plaintiff.

77. To the contrary, Defendants San Diego Sheriff GORE and all applicable SDSO DOE Defendants, condoned and/or acquiesced in the abusive, illegal, and unconstitutional behavior of the SDSO deputy Defendants named herein toward Plaintiff by refusing to discipline the SDSO deputy Defendants, re-train them, or otherwise correct their abusive behavior.

78. Upon information and belief, the SDSO deputy Defendants named herein, including SDSO DOE Defendants, were never disciplined for their unconstitutional treatment of Plaintiff on October 11, 2013, 2013.

79. Defendants San Diego Sheriff GORE and all applicable SDSO DOE

Defendants were aware that their deputies arrested Plaintiff without probable cause and that the charges against Plaintiff were dropped.

80. Defendants, San Diego Sheriff GORE and all applicable SDSO DOE Defendants were, or should have been, aware that the SDPSO policy regarding supervision and discipline of officers who violated the civil rights of the citizens and commit assault and battery was so inadequate that it was obvious that a failure to correct it would result in further incidents of dangerous and lawless conduct perpetrated by their officers.

81. Defendants San Diego Sheriff GORE and all applicable SDSO DOE Defendants, ratified the actions of SDSO deputy Defendants by failing to discipline them and failing to advise the prosecuting attorney that the facts alleged in the officers' reports were false.

82. The constitutionally deficient investigation and lack of discipline was done with deliberate indifference to the rights of Plaintiff.

83. The lack of adequate supervision and discipline by Defendants San Diego Sheriff GORE and all applicable SDSO DOE Defendants caused Plaintiffs' damages.

84. As a result of actions by Defendants San Diego Sheriff GORE and all applicable SDSO DOE Defendants Plaintiff suffered the injuries and damages alleged herein.

85. Defendants San Diego Sheriff GORE and all applicable SDSO DOE and all supervisory and policy-making DOE Defendants, are liable because they aided and abetted and/or ratified the conduct of SDSO deputy Defendants that violated Plaintiff's First, Fourth and Fourteenth Amendment rights. The acts and omissions of Defendants, and each of them, were a proximate and substantial cause of the injuries and damages alleged herein by Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(1)     For general and special compensatory damages (including direct, indirect, and emotional damages), presumed damages, and nominal damages, against <u>all</u> Defendants, in an amount to be determined by the trier of fact.

(2)     For punitive and exemplary damages against all defendants except the COUNTY and in an amount to be determined by the trier of fact.

(3)     For past and future medical expenses, in an amount to be determined by the trier of fact;

(4)     For reasonable attorney's fees and costs and expenses of litigation, pursuant to 42 United States Code sections 1983-1988, and any and all other relevant statutory or case law.

(5)     For any and all other relief, including interest and/or injunctive relief, to which Plaintiff may be entitled under law or equity and which this Court may determine is appropriate under the facts of this case.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby respectfully request a jury trial on each and every cause of action set forth in her Complaint.


Dated:   April 9, 2016       By:     */s/ Mary Frances Prevost*
                                            MARY FRANCES PREVOST
                                            Attorneys for Plaintiff
                                            BANA MOUWAKEH

<u>First Amended</u> Complaint                                                          15cv2372