**Mary F. Prevost** (SBN157782)
Attorney At Law
402 West Broadway, Suite 400
San Diego, CA 92101
Tel: (619) 692-9001
Fax: (888) 959-3790
Email: mfprevost@aol.com

Attorneys for Plaintiff
BANA MOUWAKEH

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANA MOUWAKEH,<br><br>   Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, San Diego Sheriff BILL GORE, San Diego Sheriff's Deputy STEVEN DUNNING, San Diego Sheriff's Deputy AUGUSTIN ROSAS, JR., San Diego Sheriff's Deputy YVAN ROGERS, and DOES 1-10, inclusive,<br><br>   Defendants.<br>_____ | Case No. 15CV02372-W (KSC)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS PURSUANT TO 12(B)(6 AND MOTION TO STRIKE ; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: July 11, 2016<br>Courtroom: 3C<br>Hon. Thomas J. Whelan<br><br>NO ORAL ARGUMENT PURSUANT TO LOCAL CIVIL RULE 7.1(d)(1) |

  Plaintiffs hereby opposes the Defendants' Motion to Dismiss and Motion to Strike on the grounds set forth herein.

DATED: June 18, 2016    MARY FRANCES PREVOST


             By:/s/ Mary Frances Prevost
               Mary Frances Prevost
               Attorney for Plaintiff

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## FACTS

On October 11, 2013, Defendant Deputy Agustin Rosas flagged down BanA Mouwakeh after visually calculated that she was driving 70 mph. (FAC at ¶¶ 20 - 22.) Ms. Mouwakeh disputed driving 70 mph. (FAC at ¶ 21.) She provided her driver's license, registration and proof of insurance to Deputy Rosas. (FAC at ¶ 22.) Ms. Mouwakeh asked Deputy Rosas to identify himself several times, which he declined to do. (FAC at ¶ 22, 23.) Deputy Rosas walked away back to his patrol car. (FAC at ¶ 23.) Deputy Rosas returned to Mr. Mouwakeh's car accompanied by Defendant deputies Rogers and Dunning. She again asked Deputy Rosas for his full name and badge number, which again he refused to provide. As Ms. Mouwakeh reached over with her finger to move the traffic vest that was covering his name tag, Deputy Rosas forcefully grabbed her arm and said, "That's it, you're going to jail," leaned his body into her car to unlock and open it from inside, climbed into her car, and forcibly grabbed her. Defendant Rogers grabbed Plaintiff under her armpit and defendants Rosas and Rogers together dragged Ms. Mouwakeh out of her car and dropped her to the ground. Defendant Deputy Dunning immediately handcuffed Ms. Mouwakeh. Ms. Mouwakeh had never actually touched the deputy's vest. (FAC at ¶24.)

Ms. Mouwakeh was arrested for a violation of California Penal Code sec. 243(b) (Battery on a Peace Officer) and Penal Code sec. 148(a) (Resisting and Delaying and Officer). (FAC at ¶26.)

Ms. Mouwakeh was dragged to a patrol car where she was placed in the back seat. She was taken to the sheriff's substation where she underwent the indignity of being photographed and fingerprinted. Defendants held her for nearly three hours. They did not provide her medical treatment, although she complained of severe pain. Three hours after she was falsely arrested, Plaintiff was released on her on her promise to appear in court. (FAC at ¶27.)

Defendants Rosas, Dunning and Rogers each falsified their reports to state that Plaintiff had reached out and grabbed Defendant Rosas' vest, which she did not do, in order to cover up

their false arrest and excessive force perpetrated on Plaintiff. (FAC at ¶28.)

In November 2013 a criminal complaint was filed by the San Diego District Attorney's office charging Ms. Mouwakeh with a violation of Penal Code sec. 243(b) and 148(a). The Office of the District Attorney thereafter dismissed all charges against Ms. Mouwakeh. (FAC at ¶29.)

## II
## LEGAL STANDARD FOR F.R.C.P. 12(b)(6)

Plaintiff submits on Defendants' assessment of the legal standard for review of a F.R.C.P. 12(b)(6) Motion to Dismiss.

## III.
## SUMMARY OF ARGUMENTS

### A. Conspiracy

Defendants take almost three pages of try to dismiss a conspiracy cause of action that was not pleaded in Plaintiff's First Amended Complaint. It was previously pleaded, but was removed from the most recent amended complaint.

Since there was no pleading of a conspiracy cause of action, there is nothing to dismiss. Plaintiff requests this Court deny this request, as the cause of action does not appear in the complaint.

### B. Monell Claim

Defendants at sections I and II on pages 3-9 asks this court to dismiss the Monell claim because there are no findings of multiple constitutional violations, there is no pattern and practice of misconduct, the allegations are conclusory, there is no municipal federal civil rights claims for failure to supervise and there is no personal liability for Sheriff Gore.

Defendants take more than six pages to argue these points, but completely fail to discuss an *entire body of law* that clearly refutes each and every claim. We can dispatch of all of these false claims below.

Contrary to Chief Gore's argument that he did not personally participate in the plaintiff's arrest, he is nonetheless liable as an individual defendant and because he is the admitted policy maker for the County of San Diego on law enforcement matters, because he is liable, so too is the County.

> We question whether a separate municipal liability phase will be necessary on remand. Since Binkley, who appears to be Long Beach's police policymaker, will be included in the first phase of the new trial, a municipal liability phase would likely be duplicative. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986) ( *cited in Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir.1991) (stating that evidence showing unconstitutional acts were ratified by a police chief would suffice for municipal liability)).

*De Anda v. City of Long Beach* 7 F.3d 1418, 1421 n. 5 (C.A.9 (Cal.),1993)

"A supervisor may be liable [under section 1983] based on either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Armindariz v. Penman*, 31 F.3d 860, 871, citing *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989).

As the highest ranking supervisor, Gore had special responsibilities to the plaintiff. Personal participation in the immediate acts which violated the plaintiff's rights is *not* required.

> We have long permitted plaintiffs to hold supervisors individually liable in § 1983 suits when culpable action, or inaction, is directly attributed to them. We have never required a plaintiff to allege that a supervisor was physically present when the injury occurred. In *Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir.1991), we explained that to be held liable, the supervisor need not be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Id.* at 645.

Rather, the supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 646 (internal citations, quotation marks, and alterations omitted). *Starr v. Baca* 2011 WL 2988827, 2 (C.A.9 (Cal. (C.A.9 (Cal.),2011)

A supervisor subjects a person to a violation of civil rights if he: 1. Does an affirmative act, or 2. Participates or acquiesces in another's affirmative act, or 3. Omits to do something which he is required to do, and that act or omission causes the violation of which the plaintiff has complained. *Larez v. City of Los Angeles* 946 F.2d 630 (9th Cir. 1999) (A supervisor is will rarely be directly or personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury. Yet this does not prevent a supervisor from being held liable in his individual capacity.); *Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir. 1978); *Figueroa v. Aponte-Roque*, 864 F.2d 947, 953 (1st Cir. 1989)(supervisors need not have personal knowledge of alleged constitutional violations in order to be liable under section 1983 if they were indirectly responsible or could have prevented the challenged unconstitutional conduct.); *Pool v. Missouri*, 883 F.2d 640, 645 (8th Cir. 1989).

A municipality may be held liable for a federal civil rights violation only if a municipal policy or custom directs the commission of a constitutional violation. *Monell*, 436 U.S. at 690-691.

To assert a federal civil rights claim against a municipality or a supervisor, the plaintiff must allege and present evidence that unconstitutional conduct of a government employee occurred pursuant to a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the entity's] officers." Monell, 436 U.S. at 690**.**

Defendants contend that Defendant Gore should be dismissed because the FAC alleges claims against Defendant Gore only in his official capacity and such claims are duplicative of the claims against Defendant County of San Diego. Plaintiff contends that the FAC alleges claims against Defendant Gore in his individual capacity under the theories of supervisory liability and deliberate indifference.

To demonstrate the requisite deliberate indifference, a plaintiff will usually be required to show (1) a pattern of unconstitutional conduct that put policymakers on notice of the problem and failure to take appropriate steps to redress the problem; or (2) if no pattern exists, a plaintiff might be able to demonstrate that the need for more or different training was so obvious that failure to provide such training can be said to be tantamount to deliberate indifference. See, e.g. ,*Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997) ("In Canton , we did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability."); *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989) (noting that liability of a municipality for failure to train maybe based on a single incident where the need for training was obvious, or based on a pattern of constitutional violations that gave notice of a need for more or different training)

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." Id. at 1207-1208. "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his

acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Id. at 1208.

The FAC alleges that Defendant Gore failed to properly train, failed to supervise and discipline, and maintained a practice of refusing to investigate specific instances of citizen complaints against the personnel he supervised. Paragraph 12 of the FAC sets out numerous and specific instances both before and after the instant case where Gore allowed his deputies to assault and batter numerous citizens, and even promoted deputies with multiple instances of misconduct under their belts.

The FAC alleges that Defendant Gore was aware of repeated Constitutional violations and failed to discipline deputies and take corrective measures. Id. The FAC alleges facts sufficient to infer that Defendant Gore's practices set in motion acts which caused others to inflict constitutional injury.

> We question whether a separate municipal liability phase will be necessary on remand. Since Binkley, who appears to be Long Beach's police policymaker, will be included in the first phase of the new trial, a municipal liability phase would likely be duplicative. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986) ( *cited in Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir.1991) (stating that evidence showing unconstitutional acts were ratified by a police chief would suffice for municipal liability)).

*De Anda v. City of Long Beach* 7 F.3d 1418, 1421 n. 5 (C.A.9 (Cal.),1993)

"A supervisor may be liable [under section 1983] based on either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Armindariz v. Penman*, 31 F.3d 860, 871, citing *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989).

7

As the highest ranking supervisor, had special responsibilities to the plaintiff. Personal participation in the immediate acts which violated the plaintiff's rights is not required.

> We have long permitted plaintiffs to hold supervisors individually liable in § 1983 suits when culpable action, or inaction, is directly attributed to them. We have never required a plaintiff to allege that a supervisor was physically present when the injury occurred. In *Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir.1991), we explained that to be held liable, the supervisor need not be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Id.* at 645. Rather, the supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 646 (internal citations, quotation marks, and alterations omitted).

*Starr v. Baca* 2011 WL 2988827, 2 (C.A.9 (Cal. (C.A.9 (Cal.),2011)

A supervisor subjects a person to a violation of civil rights if he: 1. Does an affirmative act, or 2. Participates or acquiesces in another's affirmative act, or 3. Omits to do something which he is required to do, and that act or omission causes the violation of which the plaintiff has complained. *Larez v. City of Los Angeles* 946 F.2d 630 (9th Cir. 1999) (A supervisor is will rarely be directly or personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury. Yet this does not prevent a supervisor from being held liable in his individual capacity.); *Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir. 1978); *Figueroa v. Aponte-Roque*, 864 F.2d 947, 953 (1st Cir. 1989)(supervisors need not have personal knowledge of alleged constitutional violations in order to be liable under section 1983 if they were indirectly responsible or could have prevented the challenged unconstitutional conduct.); *Pool v. Missouri*, 883 F.2d 640, 645 (8th Cir. 1989).

As sen above, Defendants' reliance on a quote from Canton is misplaced. A single act, or even an act that occurred after the event in question, is sufficient for a Monel claim as to both County and Gore, and for Gore both in his supervisory and individual capacity.

### C. **Retaliatory Arrest-First Amendment Claim**

Police officers may not use their powers for the purposes of oppression. *Hurtado v. California* 110 U.S. 516, 527, 28 L.Ed. 232, 4 S.Ct. 111 (1984). See also *Sacramento v. Lewis*, 523 U.S. 833, 140 L.Ed.2d 1043, 118 S.Ct. 1708 holding that the due process clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression, quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 126, 117 L.Ed.2d 261, 112 S.Ct. 1061 (1992). When the plaintiff asserts as in this case he was arrested not just in the absence of probable cause but in retaliation for the challenges to the officer's authority, liability is established under section 1983 for the deprivation of the plaintiff's First Amendment rights. At the same time, qualified immunity protection is out of reach. "There can be no doubt that the freedom to express disagreement with state action, without fear of reprisal based on the expression, is unequivocally among the protections provided by the First Amendment. *See, id.; Bloch*, 156 F.3d at 682; see also *Barrett v. Harrington*, 130 F.3d 246, 264, (6th Cir. 1997)("[T]he First Amendment right criticize public officials is well established and supported by ample case law. Furthermore, it is well established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of §1983.") *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990)("[G]overnment officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely, anyone who takes an oath of office knows - or should know -that much.")"; *Gulliford v. Pierce County*, 136 F.3d 1345, 1350 (9th Cir. 1998). "Criticism of the police, profane or otherwise, is not a crime. *Hill*, 482 U.S. at 462-63, 107 S.Ct. 2502. Poocha's yelling 'fuck you' at Ranger Lober was no more likely to provoke a violent response from the officer than Duran's tirade of obscene comments and gestures. We have repeatedly emphasized that 'while

police officers, no less than anyone else, may resent having obscene words and gestures directed at them, they may not punish individuals for conduct that is not merely lawful, but protected by the First Amendment." *U.S. v. Poocha*, 259 F.3d 1077, 1081-82 (9th Cir. 2001).

Applied to the arrest of the plaintiff, it is clear that Rosas arrested the plaintiff on a pretext– he became annoyed with Ms. Mouwakeh's attempt to communicate with him; particularly, her repeated attempt to have him fully identify himself, which she had a right to do.

Ms. Mouwakeh's ' attempt to communicate with Rosas, regardless of the psychology that may have been at play in Rosas's mind, the totality of circumstances underscores the plaintiff was being punished without having committed any crime. This continued when Rosas, upon returning to Ms. Mouwakeh after writing a ticket, unnecessarily brought his squad of officers with him, Dunning and Rogers. This was a gross abuse of the powers of a policeman and a direct result of Rosas' perceived challenge to his authority. Ms. Mouwakeh acted quite reasonably by requesting repeatedly that Rosas identify himself with his name and badge number. When he refused, she attempted to look at this name tag which was hidden behind a vest, and Rosas began the attack, that was joined in on by Dunning and Rogers. Because there is not probable cause for the plaintiff's arrest on any theory, and the evidence is such that a reasonable jury could conclude it was maliciously done in reprisal, Rosas, Dunning and Rogers are not entitled to dismissal of this claim in his favor.

## CONCLUSION

There is no merit to the defenses set forth in the instant motion. For the reasons herein set forth, the motion should be denied in their entirety.

DATED: June 18, 2016　　　　　　　　　　　MARY FRANCES PREVOST

　　　　　　　　　　　　　　　　　　　　　By: /s/Mary Frances Prevost
　　　　　　　　　　　　　　　　　　　　　　　Mary Frances Prevost
　　　　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiff