**Mary F. Prevost** (SBN157782)
Attorney At Law
402 West Broadway, Suite 400
San Diego, CA 92101
Tel: (619) 692-9001
Fax: (888) 959-3790
Email: mfprevost@aol.com

Attorneys for Plaintiff
BANA MOUWAKEH

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANA MOUWAKEH,<br><br>       Plaintiff,<br>v.<br><br>COUNTY OF SAN DIEGO, San Diego Sheriff BILL GORE, San Diego Sheriff's Deputy STEVEN DUNNING, San Diego Sheriff's Deputy AUGUSTIN ROSAS, JR., San Diego Sheriff's Deputy YVAN ROGERS, and DOES 1-10, inclusive,<br><br>       Defendants.<br>_____ | Case No. 15CV02372-W (KSC)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO 12(B)(6; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 17, 2016<br>Courtroom: 3C<br>Hon. Thomas J. Whelan<br><br>NO ORAL ARGUMENT PURSUANT TO LOCAL CIVIL RULE 7.1(d)(1) |

    Plaintiffs hereby opposes the Defendants' Motion to Dismiss her Second Amended Complaint.

DATED: September 27, 2016        MARY FRANCES PREVOST

                                    By:/s/ Mary Frances Prevost
                                        Mary Frances Prevost
                                        Attorney for Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## FACTS

On October 11, 2013, Defendant Deputy Agustin Rosas flagged down Bana Mouwakeh after visually calculated that she was driving 70 mph. (FAC at ¶¶ 20 - 22.) Ms. Mouwakeh disputed driving 70 mph. (FAC at ¶ 21.) She provided her driver's license, registration and proof of insurance to Deputy Rosas. (FAC at ¶ 22.) Ms. Mouwakeh asked Deputy Rosas to identify himself several times, which he declined to do. (FAC at ¶ 22, 23.) Deputy Rosas walked away back to his patrol car. (FAC at ¶ 23.) Deputy Rosas returned to Mr. Mouwakeh's car accompanied by Defendant deputies Rogers and Dunning. She again asked Deputy Rosas for his full name and badge number, which again he refused to provide. As Ms. Mouwakeh reached over with her finger to move the traffic vest that was covering his name tag, Deputy Rosas forcefully grabbed her arm and said, "That's it, you're going to jail," leaned his body into her car to unlock and open it from inside, climbed into her car, and forcibly grabbed her. Defendant Rogers grabbed Plaintiff under her armpit and defendants Rosas and Rogers together dragged Ms. Mouwakeh out of her car and dropped her to the ground. Defendant Deputy Dunning immediately handcuffed Ms. Mouwakeh. Ms. Mouwakeh had never actually touched the deputy's vest. (FAC at ¶24.)

Ms. Mouwakeh was arrested for a violation of California Penal Code sec. 243(b) (Battery on a Peace Officer) and Penal Code sec. 148(a) (Resisting and Delaying and Officer). (FAC at ¶26.)

Ms. Mouwakeh was dragged to a patrol car where she was placed in the back seat. She was taken to the sheriff's substation where she underwent the indignity of being photographed and fingerprinted. Defendants held her for nearly three hours. They did not provide her medical treatment, although she complained of severe pain. Three hours after she was falsely arrested, Plaintiff was released on her on her promise to appear in court. (FAC at ¶27.)

Defendants Rosas, Dunning and Rogers each falsified their reports to state that Plaintiff had reached out and grabbed Defendant Rosas' vest, which she did not do, in order to cover up

their false arrest and excessive force perpetrated on Plaintiff. (FAC at ¶28.)

In November 2013 a criminal complaint was filed by the San Diego District Attorney's office charging Ms. Mouwakeh with a violation of Penal Code sec. 243(b) and 148(a). The Office of the District Attorney thereafter dismissed all charges against Ms. Mouwakeh. (FAC at ¶29.)

## II
## LEGAL STANDARD FOR F.R.C.P. 12(b)(6)

Plaintiff submits on Defendants' assessment of the legal standard for review of a F.R.C.P. 12(b)(6) Motion to Dismiss.

## III.
## SUMMARY OF ARGUMENTS

### A. Conspiracy

This is the second time Defendants have sought dismissal of an alleged conspiracy cause of action that does not exist and has not been pleaded. It was originally pleaded, but was omitted from the First Amended Complaint and never revised. Defendants did previously seek an order of this Court dismissing the non-existent cause of action from the First Amended Complaint. The Court in its order granting and dismissing in part the FAC was silent on the conspiracy issues presumably because there was no such cause of action in the pleading and, therefore, no action for the Court to take. (See, DKT 20)

Still, this most recent dismissal motion wastes pages of text again attempting to dismiss a cause of action that has not been pleaded.

Since there was no pleading of a conspiracy cause of action, there is nothing to dismiss. Plaintiff requests this Court deny this request, as the cause of action does not appear in the complaint.

### B. False arrest and Unlawful Seizure.

After repeated Motions to Dismiss, Defendants here ask this court for the *first* time to dismiss Plaintiff's cause of action for false arrest and unlawful seizure. The argument is untenable.

Defendants seems to focus on what happened *after* the initial stop. (See, MTD p.9, l. 1-3). However, Plaintiff alleges that the initial stop in and of itself was an unlawful seizure. There is a *dispute* as to the facts properly pleaded that requires this Court to deny the initial unlawful seizure claim. Specifically: On October 11, 2013, Defendant Deputy Agustin Rosas flagged down Bana Mouwakeh after visually calculated that she was driving 70 mph. (FAC at ¶¶ 20 - 22.) Ms. Mouwakeh disputed driving 70 mph. (FAC at ¶ 21.).

Whether or not there was an initial unlawful seizure will be hashed out in discovery and potentially in a later Motion for Summary Judgment. However, it is premature at this stage to dismiss when there is a valid dispute to the facts as shown above.

The second dead end avenue Defendants drive down to obtain a dismissal of the unlawful seizure and false arrest claims rests on Ms. Mouwakeh reaching out her finger toward the uniformed officer after repeatedly asking him to identify himself -which he refused repeatedly. She sought to see his name tag which was covered by a vest. She did *not* touch him. He panicked, dove into the car, grabbed her, dragged her out, dropped her to the ground and arrested her.

Here are the facts: "As Ms. Mouwakeh reached over with her finger to move the traffic vest that was covering his name tag, Deputy Rosas forcefully grabbed her arm and said, "That's it, you're going to jail," leaned his body into her car to unlock and open it from inside, climbed into her car, and forcibly grabbed her. Defendant Rogers grabbed Plaintiff under her armpit and defendants Rosas and Rogers together dragged Ms. Mouwakeh out of her car and dropped her to the ground. Defendant Deputy Dunning immediately handcuffed Ms. Mouwakeh. Ms. Mouwakeh had never actually touched the deputy's vest." (FAC at ¶24.)

She was arrested for a violation of Penal Code sec. 243(b) (Battery on a peace officer) and Penal Code sec. 148(a) (Resisting or delaying an officer).

First, as shown by the facts above, she never touched the officer, so there was no battery.

4

Notably, Defendants try to float the false fact in their F.R.C.P. 12(b)(6) motion that, "[s]he was speeding, demanded his name and badge number and when he did not comply with her demand *she physically moved his vest* to uncover his badge without his consent, provocation or legal privilege." [Italics added]. (See, MTD, p.10, l.6-8).

That statement is patently false. She did not physically move his vest. That's fabricated for the purposes of this motion. There never was a touching, hence no battery. Therefore, the arrest was per se unlawful at to the battery charge.

Second, Ms. Mouwakeh's repeated and valid requests to the officer to identify himself clearly agitated the bully officer to become unlawfully reactionary. This Court has already *denied* Defendants' attempts to obtain this Court's order to dismiss the First Amendment retaliation claim; i.e. that deputy defendants retaliated against Plaintiff for exercising her First Amendment right to challenge their authority.

In denying Defendants's request the Court stated, "Assuming true all material allegations of fact in the FAC, Plaintiff's theory that deputies used excessive force in retaliation for her asking for a deputy's identify and badge number is plausible. See Vasquez, 487 F.3d at 1249; Iqbal, 556 U.S. at 678." (DKT, p.8, l.22-25)

What is just as odd as Defendants making up the fact that Plaintiff "physically removed" a vest in order to beef up their untenable argument that she battered one of them is the fact that Defendants do not argue any facts suggesting that the arrest for Penal Code sec. 148 (Resisting arrest) was valid. Instead, they seems to rest their opposition on the theory that just because the San Diego District Attorney dismissed all charges against Plaintiff, that fact doesn't negate probable cause. (See, MTD, p.9, l.8-16). They lay out no other theory of defense other than the prosecution's dismissal does not negate probable cause. It seems that they are, then, theorizing that the (false) fact they purport - that Plaintiff actually touched a Deputy - supports a battery (which it did not because there was no touching) and by extension, supports probable cause for resisting arrest. The predicate (false) fact - the touching - was false, and so is the extension theory.

And, as stated by this Court in its last order denying the First Amendment Retaliation claim, that alone would give rise to a false arrest for battery and excessive force if indeed the officers retaliation against Plaintiff for the exercise of her First Amendment right. That is, if there is plausible pleading of retaliation, then that negates any theory of probable cause Defendants might raise.

### C. Plaintiff Has Properly Pleaded a Plausible Claim for Excessive Force.

In denying Defendants' last F.R.C.P. 12(b)(6) motion to dismiss Plaintiff's First Amendment - Retaliation cause of action, the Court stated, "Assuming true all material allegations of fact in the FAC, Plaintiff's theory that deputies used excessive force in retaliation for her asking for a deputy's identify and badge number is plausible. See Vasquez, 487 F.3d at 1249; Iqbal, 556 U.S. at 678." (Dkt, p.8, l.22-25). The determination that excessive force was properly pleaded has already been determined.

Additionally, that Plaintiff- a lone woman who posed no threat - was pulled out of her car, thrown to the ground, handcuffed and injured during a routine traffic stop by three uniformed officers is excessive force.

Regarding excessive force, officers may only use such force as is objectively reasonable under the circumstances. *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989). According to Plaintiff's pleading, she has at least raised a viable claim that officers did not need to throw her to the ground in order for her to comply with their requests. In fact, as alleged by Plaintiff, she was not clearly disobeying orders of the deputies but was merely asking if she could acquire the identification of Deputy Rosas. She appears to have presented no physical threat to the deputies. Thus, as alleged, the use of force was not objectively reasonable under the circumstances, especially considering Plaintiff allege injuries as a result of the contact.

### D. Claims Against Sheriff Gore

Plaintiff concedes and has no opposition to this Court dismissing claims against Sheriff Gore.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests this Court to deny Defendants' request to dismiss the Fourth Amendment Claims and the Excessive Force claims. There is no conspiracy cause of action to dismiss, and so the Court does not have that properly before it. Plaintiff concedes dismissal of claims against Sheriff Gore.

DATED: September 27, 2016                MARY FRANCES PREVOST

By: /s/Mary Frances Prevost
Mary Frances Prevost
Attorney for Plaintiff